FILED
COURT OF APPEALS
DIVISION II

2014 FEB 20 AM 9:38

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 43672-8-II<br>Consolidated with<br>No. 44032-6-II |
| v. | |
| TODD CHRISTOPHER GRANGE, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Todd Christopher Grange appeals his conviction for first degree theft. He challenges the sufficiency of the evidence and claims that the trial court impermissibly commented on the evidence in its special verdict instructions and special verdict form. We affirm.

## FACTS

On March 28, 2007, Anton Rehling, the owner of Olympic Transcore, a truck brokerage business, entered into a written contract with Grange to make Rehling's website application "legal" and to train Rehling's disabled son to administer it. Report of Proceedings (RP) at 44. Grange had presented himself to Rehling as a database programmer who had worked for several

large corporations, had retired from Microsoft, and was a friend of Bill Gates and Paul Allen.
Rehling gave Grange a $2,080 retainer, which Grange cashed shortly thereafter at a check-cashing company.

On April 3, Grange came to Olympic Transcore and spent about 15 to 20 minutes with Rehling and his son. He told Rehling that the software he needed to make the site legal would cost a little over $12,000, but because he had a Microsoft account he could get it for one-half the price. Rehling then wrote Grange a check for $6,284. Grange said that it would take no more than a week or two to get the needed software. Grange cashed this check at the same check-cashing company.

While Rehling was waiting for the software to arrive and for Grange to install it, Grange called him and said that he ran a business where Grange would buy computer equipment at auctions and then resell it for large profits. Grange told Rehling that he was going to let him in on the deal so Rehling could double or triple his money. He asked Rehling to invest $18,000. When Rehling said no, Grange asked for $10,000, but Rehling again said no. Over the following days, Grange again tried to get Rehling to invest in his auctions.

Rehling began asking Grange why the software had not been installed. Grange gave multiple reasons for why the software had not arrived, always promising that it would be the next day. On April 19, 2007, Grange did not appear at a meeting as promised. Rehling left him voice mail messages, and then went to the address Grange had provided as a residence. Rehling discovered that Grange was not living there.

Grange finally responded when Rehling sent an e-mail asking for his money back and informing Grange that he had rescinded Grange's access to Olympic Transcore's servers.

Grange said that because he was busy with other customers, he was refunding Rehling's money, that he would bill Rehling after work was finished and that "[t]here are no charges to date. All previous work is done at no charge." RP at 70. Grange never returned the money, provided Rehling the software, or finished the project.

The State charged Grange with first degree theft committed by color or aid of deception. It also alleged aggravating sentencing factors. The matter proceeded to a jury trial in which Rehling testified to the events noted above. Additionally, Steve Larsen, an investigator for the Oregon State Division of Finances and Corporate Securities, testified that he contacted Grange as part of an investigation. He testified that Grange told him that Rehling had given him $6,600 to $6,700 to build a website for his business, but when he learned that Rehling did not own the software he changed his mind and was going to return the money.

Grange presented Shawn Swanner as a witness. Swanner had developed the website that Rehling asked Grange to make legal. Swanner testified that the site was legitimate as it was built on open-source software. He explained that he worked with Rehling for over two years. Toward the end, the trust relationship deteriorated and Rehling had falsely accused him of using pirated software and falsely accused Swanner's brother of stealing software.

Grange testified on his own behalf. He acknowledged signing the written contract with Rehling. He testified that the contract called for 32 hours of labor and he had worked 43 hours, and that he also worked an additional 86.3 hours outside of the contract. As a result, Rehling owed him $9,914.13 plus $2,075 for e-mail server software. Grange acknowledged that the

3

$6,284 check was for software and that he never delivered the software as promised. But he explained that while he agreed to return the money to Rehling, he said that he would only do so after Rehling paid him for his labor.

During cross-examination, the State introduced evidence that Grange had entered into "an assurance of voluntary compliance" order in an Oregon civil lawsuit, stipulating to pay $8,284 in restitution to Rehling within 30 days of that order. RP at 155. Grange admitted to never making that payment and having a judgment against him for that amount. Grange also admitted that none of the e-mails evidenced his claim that Rehling owed him money as a precondition to repayment. He also did not recall speaking with Larsen so had no explanation for Larsen's testimony.

The jury found Grange guilty as charged and found by special allegation that he "use[d] his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the crime." Clerk's Papers (CP) at 44. Relying on this finding and its own finding that the omission of Grange's prior offenses resulted in a presumptive sentence that was clearly too lenient, the court imposed an exceptional sentence of nine months in jail. Grange appeals the conviction.

## ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Grange first argues that the State failed to prove that he engaged in deception at the time Rehling gave money to Grange, which is an element of first degree theft by color or aid of deception. Grange argues that his subsequent failure to fulfill the terms of his contract was insufficient to establish first degree theft. We disagree.

Evidence is sufficient to support a conviction if "after viewing the evidence and all

4

reasonable inferences from it in the light most favorable to the State, a rational trier of fact could find each element of the crime proved beyond a reasonable doubt." *State v. Homan*, 172 Wn. App. 488, 490-91, 290 P.3d 1041 (2012), *review granted*, 177 Wn.2d 1022 (2013). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

The trial court instructed the jury that in order to convict Grange, it needed to find the following:

> (1) That, on or between March 28, 2007 and April 3, 2007, the defendant by color or aid of deception, obtained control over property of another;
> (2) That the property exceeded $1,500 in value;
> (3) That the defendant intended to deprive the other person of the property; and
> (4) That the acts occurred in the State of Washington, County of Cowlitz.

CP at 40. The trial court also defined "deception" as:

> Deception occurs when an actor knowingly creates or confirms another's false impression that the actor knows to be false or fails to correct another's impression that the actor previously created or confirmed *or promises performance that the actor does not intend to perform or knows will not be performed.*

CP at 38 (emphasis added).

The only issue Grange raises in this appeal is whether the State proved that he never intended to perform his contract with Rehling. Taking the evidence in a light most favorable to the State, it was sufficient to meet this definition. Grange took two checks from Rehling totaling $8364, well over the statutory minimum, yet provided no software and did not satisfy the terms of their written contract. Further, the evidence showed that Grange repeatedly provided excuses for the delays and stopped communicating with Rehling once Rehling demanded that Grange pay the money back. Rehling also testified that Grange repeatedly tried to induce him to give more money to invest in Grange's computer auction business. Finally, Grange gave a false residence

address when he first met with Rehling. This was sufficient evidence for the jury to assess Grange's credibility and to reasonably infer that he wrongfully obtained Rehling's money through deception with no intention of satisfying his promises. Accordingly, Grange's sufficiency of the evidence claim fails.

B.    SPECIAL VERDICT AS COMMENT ON THE EVIDENCE

Grange next argues that the special verdict instruction and special verdict form involved an improper comment on the evidence. The trial court instructed the jury:

> For purposes of the special verdict form, the State has the burden of proving beyond a reasonable doubt that the defendant used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the crime.

CP at 42. Then, in the special verdict form, the trial court asked the jury:

> QUESTION: Did the defendant use his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the crime?

CP at 44.

Grange argues that the instruction and special verdict form presumed that he was in a position of trust, confidence, or fiduciary responsibility when this should have been a preliminary jury question. He asserts that only after answering a preliminary question affirmatively, could the jury answer the question about whether he used that position of trust to facilitate his offense.

However, Grange did not object to this instruction at trial. Under RAP 2.5(a), we generally will not consider issues not raised below unless one of the exceptions listed in RAP 2.5(a) applies. Grange has not argued that an exception applies and therefore we need not address this issue.

6

No. 43672-8-II, consolidated with No. 44032-6-II

We affirm the conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
PENOYAR, J.

_____
LEE, J.